in this case. Good morning. Our portion of this is a fairly straightforward question. In three of the cases, and Mr. Rosenberg and Ms. Rosenberg are here, also delighted to answer questions if you wish to ask them too, their clients and mine all pled guilty to violation of 18 U.S.C. 1594C, which is a conspiracy to violate section 1591, which is sex trafficking in our case by force, fraud, or coercion. We agree what the guideline is with the government, which is 2G 1.1. The disagreements on what the base fence level is, the government thinks it's 34, and we think it's 14. So it's a obviously significant difference of opinion for where ultimately a sentence would end up. I think it's helpful to just go through some of the history of this first. At the beginning of the guidelines, 2G 1.1 referenced in that case, rather than Commercial Sex Act, it referenced prostitution cases. And in that case, the base fence has been 14. What changed was that in 2006, the Adam Walsh Act was passed. And part of the Act put in for the first time in section 1591 a 15-year mandatory minimum if the offense was made by force, threats, force, fraud, or coercion. The sentencing guidelines then had to be changed to accommodate the mandatory minimum. And the Commission did that in Amendment 701. And in that amendment, what they said was, they're accommodating the mandatory minimum. The actual part of Amendment 701 is that Section 208 of the Adam for sex trafficking of an adult by force, force, fraud, or coercion. In response, the amendment provides a new base fence of 34 in Section 2G 1.1. If the offense of conviction is 18 U.S.C. 1591b1, which is the 15-year mandatory minimum, but retains a base offense level of 14 for all other offenses. That was in response to a 2006 statutory act. In 2008, Congress did something else. And that's the William Wilberforce Victim Reauthorization Act. That's when they made the section that our folks pled guilty to. And they did something interesting. In Section A of 1594, they said that attempts to commit 1591 violations is punishable in the same manner as a completed violation. In B, they said, if you have conspiracies for pretty much all of the related offenses, it's the same, shall be punished in the same manner as completed violation. And then in C, specifically took out conspiracies to commit 1591 violations and said, in that case, it's any term of years of life or both. They specifically made sure to exclude this particular violation from the 15-year mandatory minimum. So you have a situation where Congress has set up a scheme in the statutes to make sure that conspiracies don't get a 15-year mandatory minimum. And the Sentencing Commission, in accommodating that mandatory minimum, has made sure to say, all other offenses don't get it. But the government is here to say, except they actually should. I think that's the first thing which should raise a question about their position. How they do that is they say, well, look at the conspiracy guideline, which is 2X1.1. And what that does is it says that you get the same base offense level as the substantive offense. The substantive offense is this. And so therefore, you should get a level 34. That is the crux of their argument. There's a couple problems with it, though. The first is the actual guideline doesn't say that the base offense level for a conspiracy is the base offense level for the substantive offense. What it says in 2X1.1a is the base offense level from the guideline for the substantive offense. You still have to read the guideline. There is part of the commentary which says that that ordinarily will be the base offense level for substantive offense and conspiracy. But there's a really notable exception. And that exception comes at the beginning of the guidelines in talking about relevant a particular guideline in a base offense level or in a specific offense characteristic may expressly direct that a particular factor be applied only if the defendant was convicted of a particular statute. Another thing which is interesting about that same paragraph, that same comment in 3B.1.1, which is comment 7, is unless such an instruction is included, conviction under the statute isn't required. Thus, use of a statutory reference to describe a particular set of circumstances does not require a conviction under the statute. An example of this usage, which they cite 2A.3.4, and they quote the language of that guideline, if the offense involved conduct described in. So it's the conduct versus conviction. And if you go back to 2G.1.1, the interesting thing is there's an example of each one of those in that one guideline. In A, what they talk about is that it's a 34 if the offense of conviction is 18 U.S.C. 1591.B.1. Yeah, but it isn't. It's 1591's penalty section, right? Well, but the C part is, with a cross reference, if offense involved conduct described in that statute. So why would there be a difference within this guideline if you want it to be the mandatory minimum, then it's 34. We need to raise the base offense level to accommodate the mandatory minimum. We didn't mean to raise any other ones, just that one. If we wanted to say the conduct described in the mandatory minimum, then why didn't they use the same language as they did in C than they did in A? What all of this really... It's a matter of fact of conviction as compared to what we end up doing when we look at the categorical approach across the board, right? That's absolutely true, and that's what 1B.1.3 says. In joint criminal conduct, you look at what the person did individually and you look at what's reasonable, foreseeable for everybody else. Except in Conduct 7, if we say you need a specific conviction, then this. What can this be other than you have to have the mandatory minimum? And when you look at the two cases that we have, basically what they say is read the guideline. And if you read the guideline, is there an offensive conviction of 1591.B.1? No. Well, then you don't have it. So is there ever an offensive conviction under B.1? There would be for every case that has a mandatory minimum. That's how you get the mandatory minimum. Well, you're actually convicted of the other underlying crime, because it's a sentencing provision, right? 1591 is a statute where A is the crime and B is the penalty. So the government argues that if we read this literally, that no one ever gets a 34 base offense level. Which, A, isn't true. And B, why would we do all that just so nobody gets an offense level? If it's common sense reading that what we're trying to do is accommodate that 15 year mandatory minimum, the common sense reading is if you have the 15 year mandatory minimum, use an increased base offense level which will actually accommodate it. Not, well, we keep saying we only want to have this for this one crime and specifically took out conspiracies to make sure everybody understood you don't get 15 years mandatory minimum for it, but do it anyway. That's the crux to their argument and really what it comes down to is their argument ends up being don't read the guideline, just apply it. But if you read the guideline, what it says is you have to have that mandatory minimum. Well, or isn't their argument really follow the commentary, not the guideline? I think that their argument actually is just apply the guideline rather than read it. Because if you read it, it makes no sense to reference that mandatory minimum and say it doesn't make any difference if you don't have it, you should just get it anyway. The common sense reading is if you have the mandatory minimum, then you would need the increased part, otherwise what happens is you don't end up with anything close to what you're going to end up for for the 15 years. The other thing that's interesting to me, if you're talking about whether the application here is correct, is to look what happened in the actual cases. In my client's case, she had a guideline range, and these are all according to the sentencing brief the government filed in each of the cases. She had a guideline range of 235 to 293 months. They recommended a variance to 29 to 121 to 151 months. They said they do that. They're recommending the significant variance due to a victimization by Coleman and personal background of abuse. And the court found the guideline was inadequate to cover what was happening. In Mr. Williams' case, according to the government sentencing memorandum, the guideline range should have been 78 to 97 months. But they said we should go down from a total offense level of 27 to 18, which was 30 to 37 months, and they're recommending the significant variance due to the nature and circumstances of this particular offense, defendant's own actions, and relative culpability compared to other co-defendants. In Ms. Brown's case, the total offense level was 31, a guideline range of 121 to 157 months. They say go to a 24, which is 57 to 70, due to the nature and circumstances of this particular offense, her own actions, relative culpability compared to co-defendants, and her personal background of significant abuse. In each one of these three cases, what the government's saying is, this is our reasonable interpretation of the guidelines, which comes out to a totally unreasonable result, and then they just pick a number. The whole point of having a guideline system is that you don't just pick numbers, that there's some rational basis behind how you do this. The rational basis is, read the guideline as written, that will give you the offense level, which, by the way, in each of those cases is substantially below their recommendation, and then go from there. To us, that makes perfect sense as to what happened. That's why the Ninth Circuit agreed with it. That's why the District Court in South Carolina agreed with it. And we think that's why this Court should agree with it, too, and remand the case for resensing. Thank you. Thank you. Ms. Campbell, when you're ready. Thank you, Your Honor. Angela Campbell on behalf of Mr. Carter. We raised several issues regarding Mr. Carter's sentencing that differ from the other defendants. We argue that the Court applied the two levels for undue influence improperly, the two levels for a Commercial Sex Act improperly, improperly grouped counts of conviction as if he had multiple counts of conviction when he did not, and that the entire sentencing process and sentence was procedurally and substantively unreasonable. I want to start with the grouping argument because that's the argument where there's clearly no authority for the government's position. In order to group counts of conviction, you either have to have a conviction, multiple convictions, or you have to have, under 1B1.2, a plea agreement with an explicit stipulation, or you have to have a guideline that says that you're able to count these multiple counts of conviction as convictions even if they're not. We have none of those. We have one plea to one count. We have a plea agreement that does not include any sort of stipulation for violations of 18 United States Code 1594. That renders 1B1.2C inapplicable. And our guideline, 2G1.3, says specifically you only add as if there's more counts if you have multiple minors. We didn't have multiple minors in this case. What was added were adult alleged victims. That's victims one and two? Yes. The minors are by letter and the adults were by number. He pled to the sex trafficking of minor victim A. He did not plead to any of the conduct that the government then accused him of at sentencing. The government argues that they presented evidence, that they offered grand jury testimony, that they had a live witness to try to prove up those facts. None of that even matters. Even if they did, which we say they didn't, but even if they did, you can't go in and make an argument for grouping purposes as to other crimes that should be added as if the defendant was convicted of them. He simply wasn't convicted of them and didn't stipulate to having committed those crimes, and therefore the grouping was error. And if you removed the grouping, that would be three levels less. Now, the pre-sentence report had it as two. That was incorrect also, but the court found and added three levels to the offense. That, to us, is clear error. In addition, the court added two levels for undue influence. This was a case where we had so many different defendants, and in each pre-sentence report they just included everything from everybody's contact. And so what we did is we objected to anything that didn't have anything to do with Mr. Carter or that we thought was factually inaccurate. When that happens, the prosecutor, if they want to rely on those facts, has to prove up those facts. And if they want to rely specifically on a fact for a guideline purpose, they have to prove it by a preponderance of the evidence. What they stated at the sentencing hearing was that they weren't going to try to prove up any of the facts other than what was in Attachment A. And Attachment A, as it related to undue influence, was only that there was one physical altercation between Mr. Carter and minor victim A. That is simply not enough. The court just adopted Attachment A without making any specific factual findings, which plays into our argument about procedural and substantive unreasonability in this case. But as it applies to undue influence, that fact is the only fact, then, that was found by the court in trying to find undue influence. There was no other finding of fact. There was not a 10-year age difference between Mr. Carter and minor victim A. Because of that, the government had the burden of proving that the undue influence applied. They had to prove that the conduct compromised the voluntariness of her behavior. Simply stating that at one point there was a physical altercation is not sufficient for their burden. There was no evidence that this altercation was related to prostitution, that it involved trying to get her to be involved in prostitution. There was no evidence that she hadn't been a prostitute prior to meeting Mr. Carter. There was no evidence about anything that was produced as it relates to overcoming her voluntariness. And so we submit that that was improperly added. Also, the entire sentencing process was completely procedurally and substantively unreasonable. We made multiple factual objections to the pre-sentence report. The government didn't try to prove them. The court didn't rule on them. There was no factual findings. The pre-sentence report was not amended. He's now in prison with all of these facts that we objected to that they didn't even try to prove, as if they were found. And the court clearly relied on these facts without making any factual findings, even though they were objected to and not proven. And you can tell that by the very short sentences that he uses in pronouncing the reasons for his sentence. And that includes that there were repeated actions, that they were depraved actions, and that there were multiple women. He also compares the culpability of Mr. Carter to the other defendants. No other defendants pled to this count and pled to this minor victim A. He's convicting Mr. Carter as if he's been convicted of conspiracy for all of the counts, even though those counts were dismissed and even though there were no factual findings that he committed these other offenses. That is procedural error and warrants reversal for the entire sentence. It's also substantive error because the judge is giving improper weight to improper facts. In fact, we don't know what facts he's giving weight to, but we know that it has to include the improper facts based on his commentary. What he did was he simply adopted the government's attachment A. And I'd invite you to actually read through that because it doesn't talk about specific facts. There's nothing in there that's depraved. There's nothing in there that is repeated. There's nothing in there that supports his comments. He must be relying upon these unproven facts that were objected to throughout the pre-sentence report. So if there are no other questions, I'd reserve the remaining time for rebuttal. Thank you. Thank you. Thank you. Mr. Bertoglio, when you're ready, that podium goes up and down. Yeah, I'm short, but my time is short, too, so this is fine. My name is Joe Bertoglio. I represent Mr. Coleman in this case, and he's raised a number of issues with regards to his sentencing after his plea to two specific substantive counts, one rendering him subject to a statutory minimum of 15 years, which is what the basis of the sentence is, as I believe. The issues I raised, number one, has to do with the grouping as well as the argument made by Ms. Campbell that she raised with regards to her client, Mr. Carter. In Mr. Coleman's case, he pled guilty to two specific substantive offenses having to do with two separate victims, victims number one and victims number four. The 15-year statutory minimum coercion count was as to victim number four, and the other act, the criminal conviction of 2422, was in relation to victim number one. So there's two victims to which he pled guilty to, and which his plea agreement provides specific facts to which he stipulated. When the pre-sentence report came out, they grouped five other victims, subjecting him to a five-level increase rather than just a two-level increase. So really what the crux of the grouping argument is here is that he should only be attributed two-level increase rather than the five that was attributed to him by the PSR. Again, using the same analysis as Ms. Campbell did for Mr. Carter, certainly he was not convicted or did plead guilty to or stipulate to any conduct relating to any conspiracy whereby a larger range of relevant criminal conduct would be involved. He pled guilty to two specific victims. He should have received just a two-level increase, not a five-level increase, that was applied pursuant to Section 2G1D1 and 3D1.4. So even though the government at sentencing took three hours to lay out the reasons why they think he should have gotten the five-level increase, certainly I don't believe that it's applicable and appropriate for him to get five levels increased for conduct for which he did not plead guilty to or did not stipulate for either separate counts of convictions for those victims or didn't stipulate to factual basis of that occurring. And I don't believe that you can just throw it all underneath the relevant criminal conduct had as well as far as trying to increase his offense level. The next issue that I raised had to do with the court failing to grant a downward departure because of the over-representation of his criminal history. Basically, he was qualified as a criminal history Category 5 in this case because he had three convictions. And even the court in its sentencing findings made a comment that it's unusual for a defendant to be a criminal history Category 5 while only having three convictions in his lifetime. So in this particular situation, it's Mr. Coleman's position that the court erred by failing to depart downward under Section 4A.1.3.B.1 because of those three criminal convictions having to do with drug offenses that somehow that should rise to a level of a grouping of individuals that are usually grouped as a criminal history 5. The other, I see my time is running short and I will reserve some of that for rebuttal. The other two issues I may be addressed then. Thank you. Thank you. I'd like to start off where we began with the base offense level issue of 14 versus 34. I want to address one argument that was made about, well, at the end of the day, the government moved for downward variances and downward variances were given. First of all, the sentences that were received were not as low as a base offense level 14, which, by the way, a base offense level 14 is what you get for man act, for transporting someone across a state line when it's an adult and the adult is doing that completely willingly. That is not a sex trafficking offense. A basal offense level 14 is what you get for a violation of the Travel Act facilitating prostitution, 1952. So that is the defendant posts an ad and does some further act of further prostitution like take them to the date. Counsel, I agree with you that you've got great policy arguments, but why shouldn't this court just follow the plain language of the guidelines? They should and the plain language says that it's a base offense level 34 and that's because Waylon and the appellants are ignoring 2X1.1. So you have to go first to 2X1.1. You don't get to 2G1.1 or 1.3 unless you start there. And so 2X1.1A says the base offense level from the guideline for the substantive offense is what you go to for a conspiracy. But wouldn't you look at the more specific language over the more general language in 2G1.1? No, but you don't get there until you start with 2X1.1. And so you have to start with 2X1.1 to say where do we go? And they talk about what the substantive offense is. So we have to look at the definition of a substantive offense, which is in the application note 2. And the application note 2 says that a substantive offense is used in this guideline, means the offense that the defendant was convicted of conspiring to commit. Under 2X1.1A, the base offense level will be the same as that for the substantive offense. So you have to look at what were they conspiring to do. And then we go to 2G1.1 because we know that that's where we go for trafficking offenses, for 1591 offenses. Because in this case, these appellants were indicted and they pled to a conspiracy under 1594C, but that doesn't live alone. It was a conspiracy to traffic by forced fraud or coercion under 1591A1 and B1. And A1 and B1 live together. You cannot pull them apart. Part of the reason I think why 1591A is not included, either in 2G1.1 or 2G1.3, which is where you go if it's a minor, I think it's because when you look at 1591A, it talks about sex trafficking of a child and by forced fraud or coercion. Those are punished in two different ways. I think of them as two different sort of crimes combined into one. But so all of that language is just shoved together in 1591A. And so then B1 and B2, it does include the penalty provision, but it also does so based off of what they were doing. Were they trafficking a minor who's under the age of 14 or an adult by forced fraud or coercion? Then you're in B1. Counsel, everything that you say makes perfect sense, but yet when I read 2G1.1, it says base offense level, sub 1, 34, if the offense of conviction is 18 U.S.C. section 1591B1. And yet we're dealing with C, conspiracy. We're dealing with 1594C. Yes, 1594C. Yes, but that is conspiring to commit that offense. So, again, you cannot read the offense of conviction alone. You have to refer back to 2X1.1. Are you really asking the court to fix a drafting error in the guidelines? I don't think it's a drafting error. I don't see, and I think that courts after courts haven't seen this as a drafting error. I understand there's Waylon. That's a contrary opinion. Our view is that that's just wrong. This issue is also up on the Third Circuit, U.S. v. Sims. It's been argued. There hasn't been an opinion yet. Otherwise, we cite to a whole list of cases where courts are applying a base offense level 34 for conspiracy because of this straightforward reading of it. And, again, as a policy argument, it just doesn't make sense. Something I was referring to about, well, the argument as well, you know, it's sort of the argument that sort of conspiracy is not as bad. So the government ended up giving a downward variance and their sentences ended up being lower. That's not the right argument. That's not what was happening here. That's not what's happening in these cases. If there is a provision for reducing that base offense level by three levels, if the conspiracy hadn't sort of gone to fruition, it's under 2X1.12, none of the defendants here qualified for that because there were completed commercial sex acts, because people were trafficked. They got the benefit of pleading to a statute that didn't have the mandatory minimum. And another thing about 2G1.1, which I think is interesting, is that if we're looking at a 1591 case, there's a cross-reference for sex abuse. But otherwise, there's no other enhancements here. So there is no explicit enhancement for how long someone has been trafficked by the defendant. There is no enhancement for whether that defendant is the one that used force, fraud, or coercion, or if they were the Uber driver that took them to the hotel in reckless disregard of the fact that somebody else was using force, fraud, or coercion. There's a whole list of factors that goes into play when the sentencing court and when the government are making recommendations. Counsel, again, I don't disagree with anything you're saying, but tell me what the offense of conviction was in this case. In this case, it is 1594C to violate, the conspiracy to violate 1591. And then read 2G1.1.1 to me. But that's not what I understand, Your Honor, that that is saying if the offense of conviction is 1591B1. But that's not what 2X1.1 says that means. But it is what 2G1.1 says. That is saying that if you violate 1591B1 and obviously A, either 1 or 2, then your base offense level is 34. I understand, Your Honor, but we're talking about the conspiracy to violate. And 2X1.1 says the conspiracy to violate that statute, you apply the base offense level as a substantive offense. So now we're out of conspiracy world, and we have to put on our hat as, okay, what were they conspiring to do? What was the offense that they were conspiring to do? And that is a violation of 1591B1. That is what they were conspiring to do. And that works the same way in drug conspiracy cases and other kinds of conspiracies. And it also makes sense that it would be a base offense level 34 given that Congress did say that a conspiracy to traffic, that we're going to make our own statute, 1594C, because before they were prosecuted under 371 conspiracies that had a five-year max. So we're going to make it so that there's a max of life. Let me go at it a different way. This court has said in U.S. v. Mooney that commentary is authoritative. So we could just follow that case and say that the commentary is authoritative here. But then again, in U.S. v. Gibson, this court had said that if there's a conflict between the guidelines and the commentary, we have to follow the guidelines. So convince me that there is no conflict here between the guidelines and the commentary. Because 2G1.1 itself, when you look at it in isolation, is not telling you what a sex trafficking conspiracy is, what the guideline is for a sex trafficking conspiracy. That's not what 2G1.1 is doing. 2G1.1 is telling you what the offense level for trafficking a 1591 conviction is. That's what 2G1.1 is doing. It's not setting out to say what a conspiracy base offense level is. That's why you go to 2X1.1. And I will note that as set out more completely in the amicus brief, this is what the commission is telling probation offices. This is what they're training their officers on. This is the advice that they're giving as to how this should be applied. So to the extent there's a question as to, well, what does the commission mean? I think the commission has said it hasn't amended. It also hasn't had a quorum to meet in the last couple years. But they are at least informally saying that this is how this should be applied. And just anecdotally, that's what the sentencing commission is doing on all sorts of things. The issues that have arisen that ordinarily they amend the commentary on rather than amending the commentary, which they can't do, the commission is just sending out such guidance saying we don't have a quorum, but this is how we think it applies, right? Yes, Your Honor. And I think in this case there's not yet, or it may be seen with a third circuit at least, there's not yet a circuit split. And I think that normally they also wait until that point to weigh in or to amend the guidelines. There's no split, but the only circuit that's ruled has gone the other way, is that right? That's true. That is the only circuit that has explicitly addressed this issue. In other cases that have been up before the circuits, a base offense level of 34 was used for conspiracy, but they didn't have this argument in front of them. If there's no further questions on that issue, I want to turn to the number of victims issue that comes up in a slightly different way with Mr. Carter and Mr. Coleman. At the outset, the way that this issue was at least initially briefed, I think by both parties, was, well, it's not in my plea agreement, I didn't agree to it, so you can't hold me responsible for it under the guidelines. And that's not how the guidelines work. If that was how the guidelines worked, we could never prove up drug quantity, we could never prove up number of firearms, we could never prove up the number of victims, not only in human trafficking cases, but in production cases. That's not the law, and that's not how that works. And I think then when you're looking at, well, should these additional victims count? Should we hold somebody responsible under the guidelines for trafficking a number of people? We look at the relevant conduct guidelines, the 1B1.2, 1B1.3. Obviously, yes, if it's explicitly in the plea agreement, then we should include it. They weren't referenced. The other victims were not referenced in Mr. Coleman's factual basis. They were in Mr. Carter's to the extent that he admitted to posting ads for them. He did not admit to conspiring to traffic or the force fraud or coercion. But then we look to what is relevant conduct. And there was no argument. There were arguments that the government's facts aren't true, that this didn't happen, but there was no argument that Mr. Carter trafficking minor victim A and using that victim to traffic victim 2, that then victim 2 is not relevant conduct. Of course, this is a case where all these victims were trafficked around the same time, in connection with each other, by the same group of people, sometimes in conspiracies. So they are relevant conduct. So then, when they're relevant conduct, do they group? Are they one grouping, or are they separate groupings? That's the next stage in the analysis. And that's when we go to 3D1.2D and the grouping rules. And it talks about, so first, just take Mr. Coleman and his adult victims, because Mr. Coleman pledged trafficking an adult, and those were all adults that were counted against him. 2G1.1 is where he is. It says under D that those are excluded from those grouping rules, so you go back and 2G1.1D1 says that they're separately grouped. So that's how that was done. And in terms of whether or not we proved it up, that's a clear error review. I think that the transcript that was lengthy, the hundreds of pages of documents we presented, we clearly proved up those victims, and that really wasn't even argued. So I think that's straightforward, and we can put that to the side. The issue of Mr. Carter is a little bit more interesting and a little bit more nuanced, and that was brought up, as far as I'm aware, the first time in Mr. Carter's reply brief. So that actually didn't have the opportunity to be briefed in front of the district court or by the government previously. But let's look at that. So Mr. Carter, because he trafficked a minor, is under 2G1.3, and I don't know why. I would like to talk to the Sentencing Commission, but they're not listed in 3D1.2D. They're not listed as being covered so that the victim should be grouped or not. So you can go to below that. It's a case-by-case determination as to whether they're separately grouped or not or how that grouping works. And I think that 2G1.1 is informative because that's telling us if it's an adult, they should be their own separate group. So that's one thing to look at. And then if you go to 2G1.3D1, they do say that if you have more than one minor, that those are separate groupings. Ms. Campbell is correct that it says if the offense involved more than one minor. It doesn't say victim, whereas 2G1.1 talks about more than one victim. But then what else are we to do? So if you have a defendant who has trafficked a 17- and an 18-year-old, both by force, fraud, or coercion, and they plead to trafficking the minor by force, fraud, or coercion, then we're in 2G1.3, and the way that Mr. Carter would have it, then that other adult is just forgotten. They don't get included in relevant conduct. They don't get included as a separate victim for grouping. But if they plead to trafficking the 18-year-old by force, fraud, or coercion, because the word minor is included, then that other minor does get included as a separate group. That doesn't make sense. And it just leads to absurd results. So in my view, that that was an oversight to say minor in D1, and I think that we would rely back on this case-by-case determination that is listed in 3D1.2 to get to that place. So we don't have to follow the language of 2G1.3D1? I think that that language says that if it's more than one minor, then that, and then it says of each victim. So I think it says that certainly if there's more than one minor, you have to separately group them. But it doesn't say that you don't group it if it's an adult victim. And so I think then we lean back on 3D1.2 that says it's a case-by-case determination, and we look at whether they are part of relevant conduct, which in this case they certainly were. I think if there's no other questions about that, I just want to touch on a couple other issues. For undue influence, there was an extensive record here. There were unobjected to paragraphs in the PSR that the government relied on, and then the government did, in order to sort of try and sort through the mess, as it were, did have laid out factual findings for Attachment A that would then clearly support the guidelines in Attachment B, so that we would have a clearer record for the appellate court. There was also testimony by Victim 2 for which the district court judge is in the best position to weigh. And the factual allegations that Mr. Carter makes in his brief are just not supported by the record, drawing citations to it. The evidence that the government put forward between the victim's testimony, grand jury testimony, phone calls, jail calls, different records, showed that Mr. Carter and minor Victim A, that they were arguing all the time. They talked about how he would grab her, the issue with the car. They were fighting because she wasn't dressed for the date the way that he wanted her to be, and he told her to get out of the car, and she opens the car and starts to step out, and he takes off so that she gets hurt. There was testimony in a partial admission by Mr. Carter that there were photographs of bruises and a cut lip on minor Victim A's face. He admitted to having an argument with her and that there were photographs of it, and two separate witnesses talked about that. He was described as being emotionally abusive. Victim 2 testified that minor Victim A had to beg for money from him. She was nine years younger. There's not a presumption because she wasn't ten years younger, but it's pretty close, and that's a factor that the court could consider. There was also testimony by multiple people, including Victim 2 at the sentencing, about Mr. Carter having a gun and that that wasn't something that he hid and that he carried around. Arguments about, well, there was no evidence that minor Victim A was involved in prostitution before Mr. Carter, it's irrelevant. It's irrelevant under the case law. That has nothing to do under the case law with whether Mr. Carter was using undue influence over her or whether he was trafficking her. She was 16 years old. So when we talk about whether or not she consented to something, well, the law has said that that's a non-starter. We're not talking about what she consented to. And so I think if your honors look at the testimony of the victim in the exhibits that we put forward, it shows that certainly it was not clear error for the district court to find undue influence there. If the court were to find that there was an error in the calculations here, I would argue that the harmless error analysis applies to each and every one of these defendants. I think it's noteworthy that we had one district judge sentence all five of these defendants and then two additional defendants. Three of these sentencings were on the same day. So Breonna Brown, Serena Williams, and Mark Carter were all sentenced on January 16th of 2019. That day at Mark Carter's sentencing, the court could not have made it more clear. At page 33 of Mark Carter's transcript, the court said that if it wasn't so serious, it would be amusing how difficult the sentencing guidelines are here. He talks about parsing the guidelines about the Commercial Sex Act and says all the time we spend on that is nearly a waste of time because we're talking about the behavior here, not some parsing of a sentencing guideline. We do this too often where we get so deep into the sentencing guidelines that we forget about what the behavior is. And for that reason, the sentence that the court imposes here is not driven by the sentencing guidelines. It's driven by the behavior. And that's what he did for each and every defendant. And that's why each and every defendant has a different sentence, that he looked at the conduct, all of the conduct, and weighed it and put them in a different position. And for those appellants who are arguing about the base offense level, they all received huge downward variances from their guidelines because of the specific role that they played in their conspiracy. And as Mr. Rigg mentioned, for Serena Williams, she was also a victim in certain senses of the word. So I think certainly the court considered the guidelines, but he made a record for each defendant that he was not giving them a sentence based upon those guidelines. If there's any other questions, I'll rest on my memorandum. Thank you. Thank you. Mr. Rigg. Thank you, Your Honor. I'll kind of run down the list here. First of all, the government mentioned in Weyland that the Ninth Circuit ignored the conspiracy guideline. If everybody agrees that conspiracy in this case gets you to GG 1.1, the circuit discussed that guideline. So they didn't ignore it. They basically went to, what your task is here, what do we do with it once we get there? And what they did is they read the guideline and said the plain language is such, if you didn't get the mandatory minimum, then we're not going to apply it. So it isn't that they ignored the guidelines. They just went and did what they were supposed to do. The government also mentioned the number of cases that they cited. That's gone through in my reply brief. None of them apply is the problem. There are two cases here which apply, and they're both adverse. They mentioned that this works the same way in drug cases, except the Controlled Substances Act is a unified statute which specifically says conspiracies have mandatory minimums. And they also mentioned that there's commission guidance which isn't commentary. There's a reason that you have a quorum. There's a reason that Congress gets to go through this stuff. And Congress, remember, specifically said no mandatory minimum. So in that case, I don't think you can rely on guidance. And finally, in the last four seconds, my total offense level was 46 to 57 months with a downward departure. Can I finish my sentence? Yes. The court would have to say, in my case, she was a victim. She was subject to coercion or duress. But I'm going to give more than double the sentence in an upward variance where she didn't commit any acts of violence or anything like that. If the court wants to do that on a resentencing, they can. But we may well be back here on a subject of reasonableness argument on why it was that you more than doubled the recommended sentence in a case where you should also still apply the downward departure because the government never appealed it. So I don't think it's reasonable. Thank you. Your Honors, the government's conflating relevant conduct and sentencing under 3553A with the clear rules of grouping as if there was another conviction. They are different rules. Even if they came in and proved another offense occurred, that does not mean they get to add points for grouping. They could argue it as part of relevant conduct and part of a 3553A factor, but they could not add another offense for grouping. Counsel, can you address the harmless error argument? Because I think that's important to Mr. Carter. Sure. On the harmless error argument, first off, the government basically shows why it's not harmless. The citation that they give to the court is he's relying on all of these objected-to facts. He's relying on all of these facts that were not proven by the government. We have no indication what facts he's relying upon, but we know he's relying upon facts that weren't proven based on his comments. In addition, he's grouping Mr. Carter as if he was convicted of all of these counts with all of these defendants. The fact that all of these sentences were on the same day, perhaps that's the reason he's pulling facts from these other sentencings, but that wasn't part of our case. We weren't at those sentencings. We weren't cross-examining those witnesses, and those facts weren't proven in our case. To say that they submitted evidence and they submitted all these transcripts and they submitted all these things, that is not sufficient to prove a burden of showing that he committed a more serious crime than what he pled to and what his plea agreement allowed him to plead to. He says he's sentencing him for his behavior. That's where the procedural and substantive error come in. He's sentencing him for behavior that wasn't proven and was objected to. The government keeps saying there was never an objection to relevant conduct. We cite the relevant conduct guideline in our briefing, both at the district court level and in the appellate court level. We do not think that these facts that have nothing to do with Mr. Carter should have been attributed to him as if it was his behavior. And so there isn't harmless error when you have substantive and procedural error. Thank you. Thank you. Mr. Patoglia, I'll give you two minutes. It's 20 seconds. It's not much unless you just... I'll wait for the further argument. Very good. Thank you.